24 cr 112 kmm/DTS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 2 |
| | 18 U.S.C. § 641 |
| v. | 18 U.S.C. § 922(g)(1) |
| | 18 U.S.C. § 924(a)(8) |
| TEZZAREE EL-AMIN CHAMPION, and | 18 U.S.C. § 1341 |
| MARCUS ALEXANDER HAMILTON, | 18 U.S.C. § 1343 |
| | 18 U.S.C. § 1957 |
| Defendants. | |

THE UNITED STATES GRAND JURY CHARGES:

## INTRODUCTION

1.     Defendants TEZZAREE EL-AMIN CHAMPION and MARCUS ALEXANDER HAMILTON devised and carried out a scheme to defraud COVID-19 pandemic aid programs of more than $1 million, involving more than 100 fraudulent invoices and loan and grant applications.

2.     Purporting to operate through a Minneapolis-based consulting firm, CHAMPION and HAMILTON contracted with Hennepin County under a COVID-19 relief program to provide local small businesses with no-cost marketing and website assistance. Instead, CHAMPION and HAMILTON used their clients to defraud Hennepin County and to submit fraudulent grant and loan applications. CHAMPION and HAMILTON kept a portion of the fraudulently obtained grant and loan proceeds for themselves. They also submitted fraudulent applications and invoices on behalf of their own businesses and entities.



United States v. El-Amin Champion

3.     During the scheme, CHAMPION—who was convicted of second-degree assault with a dangerous weapon in 2018—illegally possessed a firearm, which he showed to and discussed with clients and HAMILTON.

## BACKGROUND

4.     At all times relevant to this Indictment:

a.     In response to the COVID-19 pandemic, the U.S. federal government, Minnesota's state and local governments, and private organizations took action to assist people and small businesses affected by the pandemic.

### The Hennepin County Elevate Business Program

b.     Hennepin County's response to the pandemic included the creation of the small-business assistance program called "Elevate Business," also known as "Elevate Hennepin."  As part of the program, Hennepin County contracted with private-sector business advisors to join the Elevate Business network. The advisors agreed to provide assistance and consulting services to local small business owners and entrepreneurs, at no cost to the businesses. In return, Hennepin County paid the advisors for their services.

### Hennepin County COVID-19 Small Business Relief Grants

c.     Another response by Hennepin County to the pandemic was to issue Small Business Relief grants. The grants were funded in part by the State of Minnesota, and in part through federal funding from the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, a federal law enacted in March 2020 to provide

2

emergency financial assistance to Americans suffering economically from the pandemic.

d.       Hennepin County's Small Business Relief grants were intended to provide assistance to the businesses most affected by the pandemic. The grants were issued in five rounds from May 2020 to March 2021. In total, Hennepin County issued more than 6,500 grants, totaling $69.9 million.

### The Paycheck Protection Program

e.       At the federal level, the CARES Act created the Paycheck Protection Program ("PPP"), which authorized the U.S. Small Business Agency ("SBA") to administer more than $300 billion in forgivable loans to help small businesses continue to pay their workers during the pandemic.

f.       To obtain a PPP loan, a small business had to submit an application signed by an authorized representative of the business. In the application, the company had to provide information to determine whether the company was eligible for a PPP loan, including the number of employees and monthly payroll expenses. PPP loan applicants also had to explain how the PPP loan would be used. This information was material to the lenders' determination of applicant eligibility, the amount of funding, and loan terms. Only companies in operation prior to February 15, 2020, were eligible to receive PPP loans.

g.       PPP loan proceeds could only be used by the business for certain business expenses, such as payroll costs, mortgage interest, rent, and utilities. The

United States v. El-Amin Champion

CARES Act permitted PPP loans to be entirely forgiven if the funds were spent on eligible items, and other conditions were met.

## The Economic Injury Disaster Loan Program

h.     The CARES Act also expanded the SBA's Economic Injury Disaster Loan ("EIDL") Program, which provided loan assistance to small businesses and others experiencing a temporary loss of revenue. EIDL loan proceeds could be used to pay an array of business expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments.

i.     To obtain EIDL funds, a small business submitted an application through an online portal. The applicant was required to submit truthful information, including the business's number of employees and gross revenues for the 12 months prior to the onset of the pandemic.

j.     The EIDL program also authorized advances of up to $15,000 on EIDL loans. These advances did not need to be repaid. Only businesses that had suffered at least a 30 percent economic loss over a given period following the start of the pandemic were eligible for EIDL advances.

## Entities and Defendants

k.     Futuristic Management Group LLC ("Futuristic Management") was a Minnesota-based company purportedly in the business of marketing and advertising. Futuristic Management had a contract with Hennepin County to provide small businesses with free advice and consulting services as part of the Elevate

4

United States v. El-Amin Champion

Business program. The company operated out of a coworking space at 121 Washington Avenue North, in the North Loop neighborhood of Minneapolis.

l.      Defendant TEZZAREE EL-AMIN CHAMPION was the founder and chief executive officer of Futuristic Management. CHAMPION registered Futuristic Management with the Minnesota Secretary of State in January 2020.

m.      Defendant MARCUS ALEXANDER HAMILTON was the chief operating officer of Futuristic Management.

n.      Champion Property Services LLC was a Minnesota limited liability company, with the same address as Futuristic Management. CHAMPION registered the company with the Minnesota Secretary of State in December 2019.

o.      Chaos Twin Cities Boxing Gym LLC ("Chaos Boxing") was a Minnesota limited liability company registered in June 2020. Chaos Boxing was owned by Individual A, a former boxer who worked part-time as a boxing coach. In 2019, Individual A made less than $1,000 working as a boxing coach. He had no employees and no wage expenses.

p.      Braid Designs by Angel LLC ("Braid Designs") was a Minnesota limited liability company registered in April 2021. Braid Designs was owned by Individual B, a woman who braided hair part-time, in addition to her full-time employment. In 2019, Individual B made a profit of less than $10,000 braiding hair, and had no more than $20,000 in expenses.

q.      Knowledge Is Power LLC was a Minnesota limited liability company that was registered in September 2017. Knowledge Is Power was owned by

United States v. El-Amin Champion

Individual C, a part-time comedian. In his work as a comedian, Individual C never made more than $20,000 on an annual basis.

### Counts 1–3
(Mail Fraud)

5.      Paragraphs 1 through 4 are re-alleged as if set forth herein.

6.      Beginning in or about 2020, and continuing until the present, in the State and District of Minnesota and elsewhere, the defendants,

**TEZZAREE EL-AMIN CHAMPION and
MARCUS ALEXANDER HAMILTON,**

and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

7.      Defendants TEZZAREE EL-AMIN CHAMPION and MARCUS ALEXANDER HAMILTON devised and carried out a scheme to fraudulently obtain funds from a variety of federal, state, local, and private COVID-19 relief programs and other sources. Through their small-business consulting firm, Futuristic Management Group LLC, CHAMPION and HAMILTON engaged small business as clients. CHAMPION and HAMILTON then submitted fraudulent applications for PPP loans, pandemic relief, and other funds on behalf of their clients and their own entities.

8.      As part of the scheme, CHAMPION and HAMILTON caused Futuristic Management to enter into contracts with Hennepin County, through the Elevate

6

United States v. El-Amin Champion

Business program. Under the contracts, Hennepin County agreed to pay Futuristic Management to provide technical assistance services to businesses that were located in Hennepin County, at no cost to the businesses. But instead of abiding by the terms of the contracts, CHAMPION and HAMILTON billed Hennepin County for work not actually performed, and for work for which CHAMPION and HAMILTON were being paid, when the contracts required that Futuristic Management's work be provided at no cost.

9.      Also as part of the scheme, CHAMPION and HAMILTON submitted fraudulent loan and grant applications to COVID-19 relief programs on behalf of their clients and their own entities. When client organizations received funding, CHAMPION and HAMILTON transferred and misappropriated a portion of the funds for themselves.

10.     In total, CHAMPION and HAMILTON's fraud resulted in losses of more than $1 million to federal, state, and local governments, and to others, and it involved more than 100 false invoices and grant and loan applications.

11.     The following are examples of CHAMPION and HAMILTON's fraudulent scheme:

## Chaos Boxing

12.     In or around the spring of 2020, CHAMPION met Individual A and recruited him as a client. He assisted Individual A in forming Chaos Boxing and registering the company with the Minnesota Secretary of State.

United States v. El-Amin Champion

13.    In or around June 2020, CHAMPION drafted and submitted an EIDL application for Chaos Boxing. The application falsely stated that in 2019, the company had more than $405,000 in gross income and approximately $135,000 in costs of goods sold. Those representations were false. In reality, Chaos Boxing did not exist in 2019, as CHAMPION knew. Based on the false representations, Chaos Boxing's EIDL application was approved on July 16, 2020. Individual A received an EIDL advance of $9,000 and an EIDL of more than $100,000.

14.    CHAMPION also prepared and submitted two fraudulent applications for Hennepin County Small Business Relief grants on behalf of Individual A. CHAMPION attached to each application a fake 2019 tax document, falsely stating that Chaos Boxing had received approximately $300,000 in gross receipts, and incurred approximately $125,000 in total expenses, including approximately $50,000 in wages, for a net profit of more than $115,000. Those numbers were false, as CHAMPION knew. In reality, Chaos Boxing had no revenues or expenses in 2019. Based on the fraudulent representations, Hennepin County approved the application and paid $25,000 to Individual A.

15.    In total, Individual A received at least $130,000 in pandemic-relief funding. Individual A paid more than $125,000 of those funds to CHAMPION and his companies, Futuristic Management and Champion Property Services.

16.    CHAMPION later submitted fraudulent invoices to the Elevate Business program, falsely claiming he had provided technical assistance at no cost to Chaos Boxing. One invoice requested payment for 20 hours of work regarding

8

United States v. El-Amin Champion

"website, graphic designs, Logo." Another claimed Futuristic Management had performed 20 hours of "Business Writing." In fact, CHAMPION charged Chaos Boxing for website and business-writing assistance, rather than providing assistance at no cost, as was required by the Elevate Business contract with Hennepin County. In response to these invoices, Hennepin County mailed Futuristic Management two checks, for a total of $20,000. The check funds were deposited in Futuristic Management's bank account.

### Braid Designs

17.   In or around the spring of 2021, CHAMPION and HAMILTON met Individual B, and assisted her in forming Braid Designs and registering the company with Minnesota's Secretary of State.

18.   CHAMPION and HAMILTON prepared a fraudulent PPP application for Braid Designs. In support of the application, CHAMPION and HAMILTON included a tax document falsely stating that Braid Designs had made nearly $500,000 in gross income and had paid out approximately $335,000 in wages in 2019. CHAMPION and HAMILTON knew these representations were false. Nevertheless, CHAMPION and HAMILTON assisted Individual B with submitting the PPP application. On March 29, 2021, Individual B received a PPP loan disbursement of approximately $90,000. Individual B transferred approximately $70,000 of the fraudulently obtained PPP funds to CHAMPION and HAMILTON.

19.   CHAMPION later submitted another invoice to Hennepin County officials administering the Elevate Business program requesting payment for 25 hours of assistance regarding "Website" and "Business Writing" that had been

provided to Braid Designs. In fact, Futuristic Management charged Braid Designs for website and business advice, rather than provide the advice at no cost to the business, as required by the Elevate Business program. In response to the invoice, Hennepin County sent Futuristic Management a $19,000 check, which was deposited in Futuristic Management's bank account on July 6, 2021.

### Knowledge Is Power

20.    In or about 2020, CHAMPION met Individual C, and assisted his company Knowledge Is Power with an application for a Hennepin County Small Business Relief grant. CHAMPION drafted the application and prepared the supporting documentation, which included a fake 2019 tax return. The tax document falsely reported that in 2019 Individual C had $96,428 in gross receipts, and $58,077.99 in expenses. CHAMPION knew those amounts were false. In fact, Knowledge Is Power had not done business at all in 2019. On October 1, 2020, Hennepin County issued a grant of $15,000 to Individual C. Individual C paid over $5,000 of those funds to CHAMPION on October 5, 2020.

21.    CHAMPION also falsely claimed in an invoice to Hennepin County that Futuristic Management provided 50 hours of assistance to Knowledge Is Power regarding "website, graphics, logo, business writing." In fact, Futuristic Management charged Knowledge Is Power for that work, rather than provide the assistance at no cost to the business as required by the Elevate Business program. Hennepin County sent Futuristic Management a $15,000 check in response to that invoice, and Futuristic Management deposited the funds in its account.

<u>United States v. El-Amin Champion</u>

22.     Additionally, on or about March 21, 2021, CHAMPION and HAMILTON prepared a fraudulent PPP application requesting a loan of more than $95,000 for Knowledge Is Power. The application included a 2019 tax return falsely stating that the company had approximately $530,000 in gross income and had paid out approximately $360,000 in wages. CHAMPION and HAMILTON knew these representations were false, and that Knowledge Is Power had no revenue or expenses in 2019.

23.     Based on the fraudulent representations, an SBA participating lender awarded Knowledge Is Power a PPP loan of approximately $95,000. Individual C withdraw a portion of the loan proceeds from Knowledge Is Power's U.S. Bank checking account, then used those funds to pay CHAMPION and HAMILTON in exchange for the preparation of the fraudulent loan application.

### Champion Intimidated Clients by Showing and Discussing His Firearm

24.     As part of the scheme, CHAMPION intimidated clients by showing and discussing his firearm.

25.     In a client meeting at CHAMPION's office with Individual D in 2020, CHAMPION told Individual D that he always carried a firearm. Individual D understood CHAMPION to mean that at that moment, during the meeting, CHAMPION had a firearm on his person. CHAMPION also assisted Individual D in submitting a fraudulent loan application.

26.     In the spring of 2021, during a meeting between Individual E, CHAMPION, and HAMILTON at Futuristic Management's office, Individual E saw

11

United States v. El-Amin Champion

the outline of a firearm in the exterior fabric of a bag belonging to CHAMPION. During the meeting, HAMILTON pointed out to CHAMPION that the outline of the firearm was visible. In response, CHAMPION said he always carried a firearm. Individual E found the presence of the firearm to be intimidating. During that meeting, CHAMPION proposed to Individual E that they should work together to engage in PPP fraud, with CHAMPION's assistance. Individual E rejected the offer.

27.    On April 26, 2023, law enforcement executed a search warrant at CHAMPION's place of residence. In the home, agents found $126,000 in U.S. currency in a locked safe, and a Ruger LCR .357 revolver bearing serial number 54608402.

28.    After the execution of the search warrant, in a meeting with a former employee, Individual F, CHAMPION told Individual F that a firearm had been found at his home. CHAMPION instructed Individual F as what to say if contacted by law enforcement. CHAMPION did not dispute that the firearm belonged to him.

29.    Also after the execution of the search warrant, CHAMPION met with Individual C. CHAMPION told Individual C that a firearm had been found at CHAMPION's home. CHAMPION argued that law enforcement must have planted the firearm, because only a few people had ever been to his home.

United States v. El-Amin Champion

## Use of the Mail

30.    For the purpose of executing the scheme, on the dates listed below, CHAMPION and HAMILTON knowingly used, or caused to be used, the mail in furtherance of, or in attempt to carry out, the following matters:

| Count | Defendants | Date (on or about) | Mail Details |
|---|---|---|---|
| 1 | CHAMPION, HAMILTON | December 18, 2020 | A $5,000 check mailed by Hennepin County in Minnesota to Futuristic Management in Minnesota. |
| 2 | CHAMPION, HAMILTON | December 30, 2020 | A $15,000 check mailed by Hennepin County in Minnesota to Futuristic Management in Minnesota. |
| 3 | CHAMPION, HAMILTON | July 2, 2021 | A $19,000 check mailed by Hennepin County in Minnesota to Futuristic Management in Minnesota. |

All in violation of Title 18, United States Code, Sections 1341.

### Counts 4–6
(Wire Fraud)

31.    Paragraphs 1 through 30 are incorporated herein.

32.    From at least in or about 2020, until the present, in the State and District of Minnesota and elsewhere, the defendants,

**TEZZAREE EL-AMIN CHAMPION and
MARCUS ALEXANDER HAMILTON,**

and others known and unknown to the grand jury, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, on the dates listed below, knowingly caused to be transmitted by means of a wire

13

United States v. El-Amin Champion

communication in interstate commerce, certain writings, signs, signals, and sounds,

as follows:

| Count | Defendants | Date (on or about) | Wire Details |
|-------|-----------|--------------------|--------------|
| 4 | CHAMPION | June 25, 2020 | The internet submission of an EIDL application by Chaos Twin Cities Boxing Gym LLC requesting approximately $105,000. |
| 5 | CHAMPION, HAMILTON | March 6, 2021 | The internet submission of a PPP loan application by Braid Designs by Angel requesting a loan of approximately $90,833. |
| 6 | CHAMPION, HAMILTON | March 24, 2021 | The internet submission of a PPP loan application by Knowledge is Power LLC requesting approximately $95,833. |

All in violation of Title 18, United States Code, Sections 1343.

**Count 7**
(Theft of Government Money)

**33.**    Paragraphs 1 through 32 are incorporated herein.

**34.**    On or about March 24, 2021, in the State and District of Minnesota, the

defendants,

**TEZZAREE EL-AMIN CHAMPION and
MARCUS ALEXANDER HAMILTON,**

willfully and knowingly did steal and purloin money, of a value exceeding $1,000, of

the goods and property of the United States, in violation of Title 18, United States

Code, Sections 641 and 2.

United States v. El-Amin Champion

### Count 8
(Engaging in Monetary Transaction in Property Derived
from Specified Unlawful Activity)

35.    Paragraphs 1 through 34 are incorporated herein.

36.    On or about April 13, 2021, in the State and District of Minnesota,

**TEZZAREE EL-AMIN CHAMPION and
MARCUS ALEXANDER HAMILTON,**

did knowingly engage and attempt to engage in a monetary transaction by, through,

or to a financial institution, affecting interstate or foreign commerce, in criminally

derived property of a value greater than $10,000, that is the withdrawal of $15,000

in U.S. currency, such property having been derived from a specified unlawful

activity, that is, wire fraud and theft of government money, all in violation of Title

18, United States Code, Sections 1957 and 2.

### Count 9
(Felon in Possession of Firearm)

37.    Paragraphs 1 through 36 are incorporated herein.

38.    On or about April 26, 2023, in the State and District of Minnesota, and

elsewhere, **TEZZAREE EL-AMIN CHAMPION**, having been convicted of the

following crime punishable by imprisonment for a term exceeding one year,

| Offense | Place of Conviction | Date of Conviction (on or about) |
|---|---|---|
| Second-Degree Assault with a Dangerous Weapon | Hennepin County, Minnesota | June 14, 2018 |

and knowing he had been convicted of at least one crime punishable by imprisonment

for a term exceeding one year, did knowingly possess, in and affecting interstate and

foreign commerce, a firearm, namely a Ruger LCR .357 revolver bearing serial

15

United States v. El-Amin Champion

number 54608402, all in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8).

## FORFEITURE ALLEGATIONS

39.   If convicted of any of Counts 1 through 7 of this Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to Counts 1 through 7 of the Indictment, including $126,000 in U.S. currency seized from 14790 Jay Street, Andover, Minnesota on or about April 26, 2023.

40.   If Convicted of Count 8 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

41.   If convicted of any of Counts 1 through 7 and 9 of the Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), any firearms, ammunition, and accessories involved in or used in the commission of such violations including, but not limited to a Ruger LCR .357 revolver bearing serial number 54608402 and all ammunition and accessories seized therewith.

United States v. El-Amin Champion

42.    If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY            FOREPERSON

17