UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-112(2)

UNITED STATES OF AMERICA,

        Plaintiff,    **PLEA AGREEMENT AND**
                                       **SENTENCING STIPULATIONS**

v.

MARCUS ALEXANDER HAMILTON,

        Defendant.

The United States of America and the defendant, Marcus Alexander Hamilton, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the U.S. Attorney's Office for the District of Minnesota (hereinafter "the Government"). This agreement does not bind any other U.S. Attorney's Office or any other federal or state agency.

    1.    **Charges**. The defendant agrees to plead guilty to Counts Six and Eight of the Indictment, which charge the defendant with Wire Fraud, in violation of 18 U.S.C. § 1343 (Count Six), and Engaging in a Monetary Transaction in Property Derived from a Specified Unlawful Activity, in violation of 18 U.S.C. § 1957 (Count Eight). The defendant fully understands the nature and elements of the crimes with which he has been charged.

Upon imposition of a sentence, if there are remaining counts, the Government agrees to move to dismiss remaining charges against the defendant contained in the Indictment.

1

2.     **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Counts Six and Eight of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the U.S. Sentencing Guidelines:

Defendant Marcus Alexander Hamilton devised and participated in a scheme to defraud pandemic-relief programs of more than $1 million by submitted fraudulent applications for the Small Business Administration's Paycheck Protection Program ("PPP").

Specifically, in the fall of 2020, Hamilton was hired by Defendant Tezzaree El-Amin Champion to work at Futuristic Management Group LLC, which had its principal place of business in the North Loop neighborhood of Minneapolis, in Minnesota. After joining the company, Champion told Hamilton he could help Hamilton obtain a forgivable PPP loan through Hamilton's company, Leeton LLC, even though Leeton did not meet PPP requirements, because Leeton had no employees and had no material business. Hamilton paid Champion to supply him with fake tax documents, which Hamilton knew falsely overstated his company's income and expenses. Then, with Champion's assistance, Hamilton submitted the fake tax documents with a fraudulent PPP application. The loan was approved. Hamilton received a $20,000 loan, which was later forgiven. Hamilton spent the money on personal matters.

Next, Champion and Hamilton set out to fraudulently obtain PPP loans for clients. Champion and Hamilton came to an understanding: Champion and Hamilton would promise clients that they would prepare PPP loan-application materials on the clients'

behalf and supply the clients with fake supporting documentation that Champion and Hamilton knew would grossly and falsely inflate the clients' business incomes and expenses. Champion's role included recruiting the clients and obtaining the fake documents. Hamilton's role included helping the clients sign and submit the fraudulent applications. In return, the clients would pay Champion and Hamilton one-third of the loan funds.

For example, as part of the scheme, in 2021 Champion and Hamilton agreed to help Individual C submit a fraudulent PPP application in the name of Knowledge Is Power LLC. Champion obtained a fake tax document falsely stating that Knowledge Is Power had approximately $530,000 in gross income and had paid out about $360,000 in wages in 2019, when in reality the company's real income and wages were much lower. Hamilton met with Individual C and helped him sign and submit the application via the internet, from Minnesota, as described in the wire allegation in Count 6, on page 14 of the Indictment. Hamilton knew information in the application was false, and that the supporting document was fake. The application requested a loan of more than $95,000.

After the application was approved, Individual C received a wire transfer to his bank account of $95,833 in loan funds. Then at Champion and Hamilton's direction, also in Minnesota, over the course of three weeks Individual C withdrew $9,000, then $15,000— as described in Count 8, on page 15 of the Indictment—and finally $7,000 of loan funds from his bank account, in cash. After each withdrawal, Individual C gave the cash to Champion and Hamilton, as compensation for their assistance with the fraudulent PPP application.

Champion and Hamilton also assisted other clients with fraudulent PPP applications.

Based on these actions, Hamilton stipulates and agrees to the following, with respect to Count 6: He voluntarily and intentionally participated in a scheme to fraudulently obtain funds from a variety of federal, state, local, and private COVID-19 relief programs and other sources; he did so with the intent to defraud; and he used and caused to be used an interstate wire communication in furtherance of an essential step in the scheme, that is, the internet submission of a PPP loan application on or about March 24, 2021, by Knowledge Is Power LLC, requesting a loan of approximately $95,833.

Hamilton also stipulates and agrees to the following, with respect to Count 8: Individual C knowingly engaged in a monetary transaction involving property with a value greater than $10,000; Individual C's transaction involved the proceeds of a criminal offense—namely the wire fraud alleged in Count Six—as Individual C knew; Individual C's transaction occurred in the United States; Individual C's transaction affected interstate commerce; Hamilton knew this conduct was being committed; Hamilton had enough advance knowledge of this conduct to make the relevant choice to walk away before the transaction was completed; and Hamilton knowingly acted in some way to cause, encourage, and aid this conduct.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions. As part of this plea agreement, and based upon the concessions of the Government within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions

resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the Government and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences**. The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a U.S. citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and

consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6. **Statutory Penalties**. The defendant understands that Count Six of the Indictment, charging Wire Fraud in violation of 18 U.S.C. § 1343, is a felony offense that carries the following statutory penalties:

  a. a maximum of 20 years in prison;

  b. a maximum supervised-release term of three years;

  c. a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greater;

  d. restitution as agreed by the parties in this agreement; and

  e. a mandatory special assessment of $100.

The defendant also understands that Count Eight of the Indictment, charging Engaging in Monetary Transaction in Property Derived from Specified Unlawful Activity in violation of 18 U.S.C. § 1957, is a felony offense that carries the following statutory penalties:

  a. a maximum of 10 years in prison;

  b. a maximum supervised-release term of three years;

  c. a maximum fine of $250,000;

  d. restitution as agreed by the parties in this agreement; and

  e. a mandatory special assessment of $100.

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement

should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the U.S. Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

    a. <u>Count Six: Wire Fraud:</u>

        i) <u>Base Offense Level</u>. The parties agree that the base offense level is 7, because the statutory maximum for a conviction for wire fraud under 18 U.S.C. § 1343 is 20 years. U.S.S.G. § 2B1.1(a)(1).

        ii) <u>Specific Offense Characteristics</u>. The parties agree the offense level should be increased by 14 levels because the offense involved a loss amount of more than $550,000 but not more than $1,500,000, *id.* § 2B1.1(b)(1)(H), and by 2 levels because the offense involved conduct described in 18 U.S.C. § 1040 ("Fraud in connection with major disaster or emergency benefits"), *id.* § 2B1.1(b)(12). The parties agree no other Chapter 2 specific-offense characteristics apply.

    b. <u>Count Eight: 18 U.S.C. § 1957:</u>

        i) <u>Base Offense Level</u>. The parties agree the base offense level is 23, because that is the offense level for the underlying wire-fraud offense. *Id.* § 2S1.1(a)(1).

        ii) <u>Specific Offense Characteristics</u>. The parties agree the offense level should be increased by 1 level because the will be convicted for a violation of 18 U.S.C. § 1957. U.S.S.G. § 2S1.1(b)(2)(A). The parties agree no other Chapter 2 specific-offense characteristics apply.

    c. <u>Grouping and Combined Offense Level:</u> Counts Six and Eight group because the wire-fraud conduct for Count Six is a specific-offense characteristic or other adjustment to Count Eight's § 1957 offense. *Id.* § 3D1.2(c). The group's offense level is equal to Count Eight's offense level of 24, because it is higher than Count Six's offense level of 23. *Id.* § 3D1.3(b). Because there is only one group, the multiple

offenses do not result in an increase in offense level. *Id.* § 3D1.4. The combined offense level is 24.

d. <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the U.S. Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e. <u>Chapter 3 Adjustments</u>. The parties agree that no other Chapter 3 adjustments apply.

f. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into criminal history category I. *Id.* § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this plea agreement. *Id.*

8

      g.    <u>Imprisonment Range</u>. If the adjusted offense level is 21, and the criminal history category is I, the Sentencing Guidelines imprisonment range is 37–46 months. *Id.* § 5, pt. A.

      h.    <u>Supervised Release</u>. The Sentencing Guidelines supervised-release range is a term of 1–3 years. *Id.* § 5D1.2(a)(2).

      i.    <u>Fine Range</u>. The Sentencing Guidelines fine range is $20,000–$200,000. *Id.* § 5E1.2(c)(1)–(3).

8.    **Revocation of Supervised Release**. The defendant understands that if he were to violate any condition of probation or supervised release, the Court could revoke his supervised release, and he could be sentenced to imprisonment, in addition to any term that the Court may impose at sentencing, up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). The defendant also understands that as part of any revocation, the Court may extend or continue his supervised release, including for a term to extend after any sentence of imprisonment that is imposed as part of the revocation, as set forth in 18 U.S.C. § 3583(h).

9.    **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate, except that the Government agrees to not recommend a term of imprisonment exceeding 46 months. The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment.

12. **Restitution Agreement.** The defendant understands and agrees that 18 U.S.C. § 3663 applies and that the Court may order the defendant to make restitution to the victims of his crime. The defendant agrees that he owes restitution and agrees that the Court may order his to pay restitution in the amount of $128,116 to the U.S. Small Business Administration.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the Government the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the Government in identifying, locating, returning, and transferring assets for use in payment of restitution,

fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the Government to obtain information concerning the defendant's assets and expressly authorizes the Government to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy financial obligations imposed by the Court. If requested by the Government, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14.     **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the wire fraud scheme charged in Count 6 of the Indictment, and any property, real or personal, involved in Count 8 of the Indictment and all property traceable to such property.

The defendant consents to a money judgment forfeiture of $128,116 as a result of his conviction for Count 6, and he agrees that amount of proceeds he obtained from the wire fraud scheme equals or exceed that amount. The United States reserves its right to seek forfeiture of additional directly forfeitable property and to forfeit substitute assets from the defendant.

The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds.

15.     **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not

limited to: the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the negotiation, taking or acceptance of the guilty plea, the sentence imposed or any issues that relate to the calculation of the Guidelines range, the supervised-release term and conditions imposed, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a sentence that includes a term of imprisonment of more than 46 months.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this plea agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The Government agrees to waive its right to appeal any sentence.

16.   **FOIA Requests.**  The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17. **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the Government and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

LISA D. KIRKPATRICK
Assistant United States Attorney

Date: 2-10-2025

BY: Matthew D. Forbes
Assistant U.S. Attorney

Date: 2-10-2025

Marcus Alexander Hamilton
Defendant

Date: 2-10-2025

Lisa M. Lopez
Counsel for Defendant

13